UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNITHA HILL; TIANA FIELDS; ANTHONY GRANDERSON; BREJONNA GRANDERSON; MONTREAL GRANDERSON; UNIQUE FIELDS; MARLO HILL,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SACRAMENTO; SGT. ROBERT HAMM, #3018; OFFICER ISREAL DELGADO, #358; OFFICER BRETT MELLOCH, #602; OFFICER DEREK CALABRESE, #1005; OFFICER ERIC NEDELJKOVIC; OFFICER JOSEPH SWALEH, #900,<br><br>Defendants. | No.  2:22-cv-01625 DJC AC (PS)<br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiffs are proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  Two motions to dismiss plaintiffs' operative First Amended Complaint ("FAC") (ECF No. 16) are before the court: (1) a Motion to Dismiss brought by defendant Officers Hamm, Delgado, Melloch, Calabrese, Nedeljkovic, and Swaleh (ECF No. 19), and (2) a Motion to Dismiss brought by the City of Sacramento (ECF No. 17).  Plaintiffs oppose both motions.  ECF No. 22.  Plaintiffs also move for judicial notice of documents in support of their opposition (ECF No. 21), which defendants oppose (ECF No. 25).

1

For the reasons that follow, the undersigned denies the motion for judicial notice and recommends that the FAC be dismissed with limited leave to amend.

### I. Background

#### A. Procedural History

This case was filed on September 16, 2022. ECF No. 1. The initial complaint presented nine causes of action identified as follows: (1) unreasonable seizure of property in violation of the Fourth Amendment; (2) unreasonable seizure/false arrest/imprisonment in violation of the Fourth Amendment; (3) 42 U.S.C. § 1983 Violation of Equal Protection Clause; (4) § 1983 Monell Claim; (5) Americans with Disabilities Act; (6) California Unruh Act; (7) Bane Act; (8) California State Law False Imprisonment; and (9) Negligent Infliction of Emotional Distress. ECF No. 1 at 6-12. Following a motion to dismiss by the City, the complaint was dismissed with leave to amend. ECF Nos. 14, 15. Plaintiffs filed a First Amended Complaint on February 28, 2023. ECF No. 16.

#### B. Allegations of the First Amended Complaint

Plaintiffs Arnitha Hill, Tiana Fields, and Unique Fieldes spent the night of October 5, 2021 at 2027 O'Neil Way in Sacramento to prepare for a relative's funeral set to occur on October 6, 2021. ECF No. 16 at 4. On October 6, 2021, after the funeral of the family member, all plaintiffs were to spend the night at the home. Id. at 4. Following the funeral, plaintiffs and others gathered in the Meadowview area of Sacramento. Id. Around 9:30 p.m., unknown individuals shot at the gathering and two members of the gathering allegedly returned fire. Id.

The gang unit of the Sacramento Police Department responded because gang members involved in the shootings had GPS ankle monitors. Id. Upon arrival at the house, defendant officers Hamm, Delgado, Calabrese, Nedeljkovic, Swaleh, and Melloch used authoritative yelling to make all individuals exit the home, including plaintiffs. Id. The officers were "seizing the home by saying they were taking the home because they believed more people were still in the home, and people might be injured in the home," though plaintiffs believe this justification was merely an excuse to seize the home unlawfully. Id. The officers began to target all adult males, telling them they were being detained and to line up against a tree in the front yard and give their

2

names. Id. at 5. Plaintiff Anthony Ganderson was detained and searched. Id. Only black men were arrested, searched, and detained in vehicles; females were not searched or handcuffed. Id.

Plaintiffs were kept out of the house for over an hour and were not allowed to leave the scene. Id. Plaintiff Montreal Ganderson was racially profiled and handcuffed and was told he fit the description of Bradley Johnson, even though they do not look alike. Id. Defendant officers did not let plaintiffs back into the home, refused to let the disabled plaintiff sit down, and plaintiffs were not allowed to go back into the house to retrieve disability appliances, including a knee brace and walker. Id. at 6. The weather outside was extremely cold and all plaintiffs suffered from colds because of having to stand outside. Id. Plaintiffs were not permitted to re-enter the home even after Bradley Johnson and Fitzgerald Davis were arrested. Id. at 7.

Plaintiffs, who are the mother, sisters, and first cousin of Eric Alston had to "watch in dismay and horror" as Alston was handcuffed and detained in a patrol vehicle. Id. Plaintiffs knew that Alston suffered from a hand and arm injury due to defendant officers' conduct. Id. Defendant officers attempted to intimidate plaintiffs into giving them the name of Alston. Id. Eventually, after an hour, plaintiffs were allowed to re-enter the residence. Id. at 8. Plaintiffs allege they suffered emotional distress from the incident, and that the City of Sacramento "has a custom and practice of unfairly targeting black people with false imprisonment, discriminatory practices, and unreasonable force." Id. at 9. Plaintiffs further allege they were "denied full and equal accommodations, and services due to their skin color and race." Id.

## II. Analysis

A. Judicial Notice

Plaintiffs move the court to take judicial notice of documents filed in a separate case pending in this court in which plaintiffs' relative Eric Alston is the plaintiff: Alston v. City of Sacramento, 2:21-cv-02049 DAD AC at ECF Nos. 19 (Declaration of Eric Alston), 22 (Opposition by City of Sacramento), and 30 (Notice of Lodging by Eric Alston). ECF No. 21 at 2. These documents are not proper subjects of judicial notice.

Facts which are subject to judicial notice are those "not subject to reasonable dispute" because they (1) are "generally known within the trial court's territorial jurisdiction" or (2) "can

3

be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond. A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003) (internal citations omitted).

It is well-established that a court may take judicial notice of its own records. See United States v. Author Servs., Inc., 804 F.2d 1520, 1523 (9th Cir. 1986), overruled on other grounds, United States v. Jose, 131 F.3d 1325, 1328-29 (9th Cir. 1997). However, there is a fundamental difference between recognizing the fact that records exist, and recognizing as true the factual assertions contained within the records. This court may not and will not take judicial notice of the contents of, or facts asserted within, the documents identified by plaintiffs.[1]

While there would be nothing improper in judicially noticing the existence of the referenced filings, their existence is not relevant to any issue before the court on the motions to dismiss. Accordingly, the motion for judicial notice will be denied.

B. Legal Standards Governing Motions to Dismiss for Failure to State a Claim

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it

---

[1] The documents referenced by plaintiffs contain evidence that would not be admissible in the context of a motion to dismiss; consideration of evidence outside the pleadings is appropriate at the summary judgment (Fed. R. Civ. P. 56) stage of a case. If in the future plaintiffs wish the court to consider evidence on summary judgment, it must be filed in this case – it cannot be incorporated from another case through requests for judicial notice.

must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

C. <u>Failure to Comply with Rule 11</u>

Pursuant to Fed. R. Civ. P. Rule 11(a) "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number." Fed. R. Civ. P. Rule 11(a). Here, the FAC identifies Arnitha Hill, Anthony Granderson, Brejonna Granderson, Montreal Granderson, Unique Fields, and Tiana Fields as plaintiffs. ECF No. 16 at 19. The FAC provides four addresses and three phone numbers, without indicating which addresses and phone numbers are associated with each plaintiff. <u>Id.</u> at 1. No email addresses are provided for the six individuals. <u>Id.</u> While the FAC requests that all documents be served only to one address, it is unclear who resides at the address. For these reasons, the FAC fails to comply with Rule 11 as to Arnitha Hill, Tiana Fields, Anthony Granderson, Brejonna Granderson, Montreal Granderson, and Unique Fields.

D. <u>Plaintiffs Fail to State a Fourth Amendment Claim Except as to Hill's Circumstances of Detention</u>

Plaintiffs allege that the officer defendants violated their Fourth Amendment right against unreasonable seizure of property (First Cause of Action) and their Fourth Amendment right against unreasonable seizure of their persons (Second Cause of Action). ECF No. 16 at 9-10. With respect to seizure of both persons and property, "[t]he Fourth Amendment proscribes only 'unreasonable' searches and seizures." <u>Franklin v. Foxworth</u>, 31 F.3d 873, 875 (9th Cir. 1994). Whether a seizure is unreasonable is measured by an objective test based on all the circumstances of a given situation: "a detention may be unreasonable in a particular instance either because the detention itself is improper or because it is carried out in an unreasonable manner." <u>Id.</u> at 876. Objective reasonableness in the Fourth Amendment context is evaluated from the perspective of a "reasonable officer on the scene," considering all the facts and circumstances confronting law enforcement. <u>Torres v. City of Madera</u>, 648 F.3d 1119, 1124 (9th Cir. 2011).

"Probable cause alone will not support a warrantless search or arrest in a residence . . . unless some exception to the warrant requirement is also present." <u>United States v. Al-Azzawy</u>, 784 F.2d 890, 894 (9th Cir. 1985). Exigent circumstances, defined by the Ninth Circuit as "those

in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained," are an exception to the warrant requirement. United States v. Robertson, 606 F.2d 853, 859 (9th Cir. 1979). Exigent circumstances include those circumstances in which there is "(1) the need to prevent physical harm to the officers or other persons, (2) the need to prevent the imminent destruction of relevant evidence, (3) the hot pursuit of a fleeing suspect, and (4) the need to prevent the escape of a suspect." United States v. Struckman, 603 F.3d 731, 743 (9th Cir. 2010) (citing Fisher v. City of San Jose, 558 F.3d 1069, 1075 (9th Cir. 2009) (en banc) (safety); United States v. Ojeda, 276 F.3d 486, 488 (9th Cir. 2002) (safety, escape, and evidence); United States v. Johnson, 256 F.3d 895, 907 (9th Cir. 2001) (hot pursuit)). The Fourth Amendment also permits as reasonable under some circumstances the detention of a person who is not suspected of having committed a crime, including in "emergency situations" when local law enforcement officers are acting to keep the peace. Maxwell v. County of San Diego, 708 F.3d 1075, 1084 (9th Cir. 2013).

Here, it is clear from the face of the FAC that the circumstances to which defendants responded were exigent and thus justify most, if not all, of the actions of the officers. Defendants were responding to a shooting that had just occurred, with shots fired from both inside and outside the residence in question, and any delay in action in order to obtain a warrant could therefore have affected the law enforcement processes of public safety, peacekeeping and investigation. Requiring individuals to exit and remain outside the home for an hour (or even just over an hour) while officers cleared the scene in the immediate aftermath of an exchange of gunfire cannot be viewed as an unreasonable seizure of the home.

As to the alleged unreasonable seizure of persons, the allegation that the plaintiffs were required to remain outside and not allowed to go back into the home for approximately one hour also fails to demonstrate objective unreasonableness. Under some circumstances, the Fourth Amendment permits as reasonable the detention of a person who is not suspected of having committed a crime—including in "emergency situations" when local law enforcement officers are acting to keep the peace. Maxwell, 708 F.3d 1075 at 1084. To determine the reasonableness of a witness's detention, courts examine "the gravity of the public concerns served by the seizure, the

degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Id. (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)). Because the state's interest in an investigative witness' detention is "relatively low," the detention must be "minimally intrusive." Id. at 1083. The Maxwell court noted that the Supreme Court "has never endorsed a detention longer than 90 minutes" even in a stop which involves a suspicion of criminal activity on the part of the detainee. Id. at 1084.

Here, the facts alleged in the FAC make clear that the length or fact of plaintiffs' detention was not inherently unreasonable. As in other cases in which plaintiffs "were detained for a short period of time on their own property," plaintiffs were reasonably required to wait outside the house for one hour while officers secured the scene in the immediate aftermath a shooting. Bernal v. Sacramento County Sheriff Dep't, 598 F. Supp. 3d 898, 904 (E.D. Cal. 2022). Though there is no per se rule as to the length of time at which point an investigative detention automatically becomes "unreasonable," significant prior case law in this Circuit has held that an investigative detention approximating an hour is reasonable. Id., see also, Blight v. City of Manteca, 944 F.3d 1061, 1068 (9th Cir. 2019) (detention of suspect's elderly mother for duration of search of his property was reasonable under Fourth Amendment, notwithstanding her age and lack of evidence linking her to suspect's criminal activity, where detention lasted no longer than one hour). The court agrees with defendant officers that the one-hour exclusion of plaintiffs from the property following the exchange of gunfire is objectively not unreasonable.

Plaintiffs' allegation that the detention was unreasonable because of "extreme cold weather" also fails to state a claim for relief. It is true that some courts have found that "unnecessary detention in extreme temperatures" violates the Fourth Amendment's prohibition on unreasonable searches and seizures, but they have also found that a jury could not reasonably find that a plaintiff was subject to sufficiently cold temperatures where the plaintiff never told officers he was cold, described his condition upon arrest as "good," and did not have medical symptoms for hypothermia. See, Miller v. Sanilac County, 606 F.3d 240, 251 (6th Cir. 2010). The facts alleged in the complaint do not demonstrate a detention that was objectively unreasonable due to cold weather. Plaintiffs were caused to remain outside in Sacramento, California for

approximately one hour in early October. ECF No. 16 at 4. Even if it was chilly, discomfort does not constitute extreme weather. On the facts alleged it is not plausible that conditions were so extreme as to render the hour outdoors objectively unreasonable.[2]

The facts relevant to the legality of the detention have been fully and specifically pled, and do not rise to the level of a Fourth Amendment violation as a matter of law. Accordingly, the failure of the FAC to state a Fourth Amendment claim cannot be cured by amendment. There is one point, however, on which amendment may allow for a plausible claim. Plaintiffs allege that "the disabled plaintiff," who the court infers from context is Arnitha Hill, was not allowed to sit during the detention. ECF No. 16 at 6. Insufficient facts are provided in the FAC to state a claim: the nature of the disability and related need for accommodation are not specified. Nor is it clear if that individual ever specifically asked to sit down and was expressly denied the opportunity. Amendment to add additional facts may cure these defects. Thus, plaintiffs' Fourth Amendment claims should be dismissed in their entirety without leave to amend *except* as to the Fourth Amendment unreasonable detention claim related to the disabled detainee's inability to sit down.

### E.  Plaintiffs Fail to State an Equal Protection Claim

Plaintiffs allege that the officer defendants violated their equal protection rights under the Fourth and Fourteenth Amendments by detaining only black males and therefore intentionally discriminating against black males (Third Cause of Action). ECF No. 16 at 11. The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall ... deny to any person within its jurisdiction equal protection of its laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all similarly situated persons should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The guarantee of equal protection is not a source of substantive rights or liberties, but rather "a right to be free from discrimination in

---

[2] Plaintiffs are not specific regarding their definition of "extreme cold," nor do they allege any unusual atmospheric conditions were occurring. The only allegation of harm related to cold is that plaintiffs "suffered colds for multiple days after this event." Id. at 13. Plaintiffs (who at the time of the detention were at a large gathering of people in an enclosed space) cannot plausibly demonstrate a causal connection between standing in the cold for one hour and suffering from a viral infection (common cold) for days after the event.

statutory classifications and other governmental activity." Williams v. Vidmar, 367 F.Supp.2d 1265, 1270 (N.D. Cal. 2005). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." Washington v. Davis, 426 U.S. 229, 239 (1976). In a § 1983 claim alleging a violation of equal protection, a plaintiff "must prove that the defendant acted in a discriminatory manner and that the discrimination was intentional." Fed. Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991) (citing Stones v. Los Angeles Cmty. Coll. Dist., 796 F.2d 270, 275 (9th Cir. 1986)) (additional citations omitted). In other words, to prove an equal protection violation, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. Thornton v. City of St. Helens, 425 F.3d 1158, 1166–67 (9th Cir. 2005). The fact that an officer and a plaintiff are of different races combined with a disagreement as to the reasonableness of the arrest is insufficient to show an Equal Protection Clause violation. Bingham v. City of Manhattan Beach, 341 F.3d 939, 948 (9th Cir. 2002), overruled in part on other grounds by Edgerly v. City & County of San Francisco, 599 F.3d 946, 956 n.14 (9th Cir. 2010).

Here, taking the facts asserted in the FAC as true, plaintiffs do not state a claim under the Fourteenth Amendment. Plaintiffs assert the officer defendants "forced these innocent males to line up against the tree in the front yard and give their names in a direct form of slave chattel rendering of the early 1700s slavery of black people. . . . they only had black men arrested, search and detained in patrol vehicles, and they all had distinctive characteristics, and body features. So it clears [sic] the defendants intended to discriminate against black males and the other black men due to their race, and gender because the only similarity between all of them, was our race and gender." ECF No. 16 at 5. The fact that only black men were arrested and/or detained does not provide a sufficient factual basis to state a Fourteenth Amendment Equal Protection claim, particularly when there is no indication that there were non-black males on the scene who were not detained. Conclusory allegations of systemic racism in the police department are insufficient to support an inference of discrimination in this case. To the extent that plaintiffs allege that only males and not females were detained, this allegation is contradicted by the fact that multiple

females are plaintiffs in this case and are making allegations that their rights were violated because they were, in fact, detained. Plaintiffs fail to allege facts to support a prima facie Equal Protection claim. This claim must be dismissed.

### F. Plaintiffs Fail to State a Deliberate Indifference Claim

Plaintiffs allege the officer defendants were deliberately indifferent to Ms. Hill's medical needs by refusing to let her back into the house to retrieve her medical equipment, and by forcing plaintiffs to stand outside in the cold weather, causing them to catch colds in violation of the Fourteenth Amendment (Fourth Cause of Action). ECF No. 16 at 12-13. Use of the phrase "deliberate indifference" in relation to a person's health or medical need suggests the standards applicable to incarcerated individuals. Deliberate indifference to the serious medical needs of a person serving a criminal sentence is prohibited by the Eighth Amendment, and deliberate indifference to the serious medical needs of a pretrial detainee is prohibited by due process. See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (Eighth Amendment standards applicable to prisoners following conviction); Gordon v. County of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (Fourteenth Amendment standards applicable to jail inmates awaiting trial). The government's duty to provide care and the correlative prohibition of deliberate indifference apply only to persons in custody, because the government has assumed responsibility for the conditions of their ongoing confinement. See Estelle, 429 U.S. at 103; Gordon, 888 F.3d at 1124 (quoting Wilson v. Seiter, 501 U.S. 294, 303 (1991)). Here, plaintiffs' detention was not custodial at all, so a "deliberate indifference" theory does not apply.

The conditions of plaintiffs' temporary detention are governed directly by the objective reasonableness standard of the Fourth Amendment, which has been discussed above. Accordingly, the deliberate indifference standard applicable to custodial detainees has no application here. See Graham v Connor, 490 U.S. 386, 388 (1999) (claims regarding a free citizen's investigatory stop or other seizure by police are governed by Fourth Amendment, not due process). "Deliberate indifference" therefore does not provide any basis for relief on the facts of this case. Should the district judge adopt the recommendation to permit amendment of Ms.

////

Hill's Fourth Amendment claim related to her need to sit, she may incorporate into that claim any details regarding the denial of her medical equipment.

### G.  Plaintiffs Fail to State a Due Process Claim

Plaintiffs allege that the officer defendants violated their substantive and procedural due process rights under the Fifth and Fourteenth Amendments by seizing the home they were staying in and discriminating against plaintiffs Montreal and Anthony based on their status as black males (Fifth Cause of Action).  ECF No. 16 at 13-14.  The alleged seizures are governed by the Fourth Amendment, and race-based discrimination by the Equal Protection Clause, both of which have been addressed.  Where a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision and not under the rubric of substantive due process.  County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998); Albright v. Oliver, 510 U.S. 266, 273 (1994); Aguilar v. County of Fresno, 2008 WL 4712377, 2 (E.D. Cal. 2008).  Accordingly, plaintiffs cannot maintain a Fourteenth Amendment due process claim based on a police seizure or racially discriminatory treatment.

No facts presented in the SAC suggest a due process claim that would not be duplicative of the unreasonable seizure and equal protection claims previously discussed.  The Fifth Amendment contains both a "takings clause" and a "self-incrimination" clause, and none of the allegations in this case implicate either provision.  The takings clause primarily addresses the permanent taking of private property for public use.  See Bridge Aina Le'a, LLC v. Land Use Comm'n, 950 F.3d 610, 625 (9th Cir. 2020).  It does not apply to temporary law enforcement seizures that are governed by the Fourth Amendment.  Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2079 (2021).  A self-incrimination claim is available under Section 1983 only when a plaintiff makes a statement under interrogation that is subsequently used against him in a criminal proceeding.  Chavez v. Robinson, 12 F.4th 978, 989 (9th Cir. 2021).  This case includes no such allegations.  Accordingly, the putative due process claims cannot be cured by amendment.

### H.  Plaintiffs Fail to State an Unruh Act Claim

Plaintiffs allege that all defendants violated the Unruh Act by "limiting . . . the plaintiffs to move freely and be free from racial discrimination[.]"  ECF No. 16 at 14 (Sixth Cause of Action).

This cause of action appears to be alleged on behalf of only three plaintiffs: Anthony Granderson (race), Arnitha Hill (medical condition), and Montreal Granderson (race). Id. The Unruh Civil Rights Act provides:

> All persons within the jurisdiction of [California] are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). The Unruh Act creates a private right of action against anyone who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51." Cal. Civ. Code § 52(a). To prevail on an Unruh Act claim, a plaintiff must "prove intentional discrimination." Cohn v. Corinthian Colls., Inc., 169 Cal. App. 4th 523, 526 (2008).

For the same reasons that the FAC does not state a § 1983 claim for racial discrimination, it cannot state an Unruh Act claim based on the same allegations. In sum, the circumstances of the police response at issue in this case do not support an inference of intentional racial discrimination. Accordingly, neither Anthony Granderson nor Montreal Granderson can maintain an Unruh Act claim.

The claim also fails as to Ms. Hill. First, even if Ms. Hill was actively and unreasonably prevented from sitting down or otherwise accommodating her condition in violation of the Fourth Amendment, no inference of intentional discrimination on the basis of disability or medical condition would arise. And the situation giving rise to this lawsuit did not involve denial of access to any public accommodation offered by a business establishment. See generally, Munson v. Del Taco, Inc., 46 Cal.4th 661, 665 (2009); Wilkins-Jones v. County of Alameda, 859 F. Supp. 2d 1039, 1050 (N.D. Cal. 2012). Accordingly, there is no cognizable claim available under the Unruh Act.

I. Plaintiffs Fail to State a Bane Act Violation

Though it is not clearly worded, plaintiffs' Seventh Cause of Action asserts a violation of the Bane Act. ECF No. 15 at 15-16. The Tom Bane Civil Rights Act, 1987 Cal. Stat. 4544, was enacted in 1987 to address hate crimes. The Bane Act protects individuals from conduct aimed at

13

interfering with rights that are secured by federal or state law, where the interference is carried out "by threats, intimidation or coercion." See Venegas v. County of Los Angeles, 153 Cal.App.4th 1230 (2007). Section 52.1 "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims. See Venegas, 63 Cal.Rptr.3d at 753. "The Bane Act requires a specific intent to violate" the plaintiff's rights. Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (internal citations omitted).

Here, plaintiffs have not alleged facts from which it is plausible to infer that the defendant officers or the City had a "specific intent" to violate their rights. A specific intent to violate means more than an intent to detain plaintiffs; the officers doing the detaining must have intended that the detentions violate plaintiffs' rights. The facts alleged in the FAC do not and cannot support a Bane Act claim, particularly given the fact that plaintiffs' have previously been instructed on the requirements of a Bane Act allegation and have already had an opportunity to amend their complaint to state a claim. This cause of action should be dismissed without leave to amend.

J.   Plaintiffs Fail to State a False Imprisonment Claim

Plaintiffs allege that plaintiffs Hill, Fields, Anthony and Brejonna "were imprisoned from the house, while having their liberties restricted, and denied access to their home. Plaintiff Montreal was detained and seized by defendant Calabrese for being black and wearing a white t shirt and long hair." ECF No. 16 at 17. Under California law, false imprisonment is the "'unlawful violation of the personal liberty of another.'" Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting Asgari v. City of Los Angeles, 15 Cal. 4th 744, 757 (1997)). The elements of false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Easton v. Sutter Coast Hospital, 80 Cal. App. 4th 484, 496 (2000) (citation omitted).

Here, to the extent plaintiffs' liberties were restrained such that they were not allowed to leave the front area of their property, there is no false imprisonment claim because the defendant officers were responding in the immediate aftermath of a shooting. Local law enforcement officers are constitutionally permitted to detain individuals in emergency situations when officers are acting to keep the peace. Maxwell v. County of San Diego, 708 F.3d 1075 (9th Cir. 2013). Accordingly, the detention at issue here was not "without lawful privilege." Easton, 80 Cal. App. 4th at 496. Moreover, to the extent plaintiffs assert they were imprisoned because they could not enter their home, such an allegation does not support a false imprisonment claim because it involves only the exclusion from a specific area, not actual confinement. The FAC does not and cannot state a claim of false imprisonment.

### K. Plaintiffs Fail to State an Emotional Distress Claim

Plaintiffs allege that all defendants negligently inflicted emotional distress upon plaintiffs "Arnitha, Tiana, Unique, and Brejonna" as they were forced to witness their close relative, Eric Alston, be handcuffed, injured by the handcuffing, and detained. ECF No. 16 at 18. Arnitha is Alston's mother, Unique and Tiana are his sisters, and Brejonna is his cousin. ECF No. 16 at 7. The California Supreme Court "[has] repeatedly recognized that the negligent causing of emotional distress is not an independent tort, but the tort of negligence." Burgess v. Superior Court, 2 Cal.4th 1064, 1072 (1992) (internal citations and quotations omitted). The elements of a cause of action for negligence are well established. They are: (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach is the proximate or legal cause of the resulting injury. Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996); see also Truong v. Nguyen, 156 Cal. App. 4th 865, 875 (2007).[3]

NIED includes "at least two variants of the theory:" bystanders and direct victims. Wooden v. Raveling, 61 Cal.App.4th 1035, 1037 (1998). "Bystander' cases are cases in which the plaintiff was not physically impacted or injured, but instead witnessed someone else being

---

[3] Defendant officers rely on immunity conferred by Government Code § 821.6. ECF No. 19-1 at 22-23. The court notes that the California Supreme Court recently clarified that immunity under this code section does not apply to investigations by police. Leon v. County of Riverside, No. S 269672, 2023 WL 4112144, at *2 (Cal. June 22, 2023).

15

injured due to defendant's negligence." Wooden, 61 Cal.App.4th at 1037.  To survive dismissal of their bystander claim, plaintiffs must allege sufficient facts for the court to infer that plaintiffs are: (1) "closely related to the injury victim," (2) "present at the scene of the injury-producing event at the time it occurs and [ ] then aware that it is causing injury to the victim," and (3) that plaintiffs suffered "emotional distress beyond that which would be anticipated in a disinterested witness." Thing v. La Chusa, 48 Cal.3d 644, 647 (1989).  For the purposes of an NIED claim, the phrase "closely related" has been defined to include any relatives residing in the same household, or any parents, siblings, children, and grandparents of the victim. Moon v. Guardian Postacute Services, Inc., 95 Cal.App.4th 1005, 1009 (2002).

Here, Ms. Hill, Unique and Tiana are sufficiently closely related to Mr. Alston to bring an NIED bystander claim, but it is unclear that Brejonna, as Mr. Alston's cousin, is closely related enough to bring a claim.  It is unclear, for example, if Alston and Brejonna reside in the same household.  This deficiency could potentially be cured with amendment.  The NIED claim in the FAC fails as to all plaintiffs, however, because they insufficiently allege emotional distress in the context of their complaint. "[S]erious mental distress may be found where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Molien v Kaiser Foundation Hospitals, 27 Cal.3d, 916, 928 (1980).  While the court appreciates that watching a loved one be handcuffed and detained would be upsetting to most people, it is not inherently a situation beyond the coping capacity of a reasonable person.  Moreover, plaintiffs alleged the same symptoms ("anxiety, stomach pains, severe colds, timidness, fearfulness, hopelessness, sadness, depression, suffering, and PTSD") for nearly all their causes of action. See ECF No. 16 at ¶¶ 33 (First Cause of Action), 37 (Second Cause of Action), 41 (Third Cause of Action), 53 (Sixth Cause of Action), 61 (Seventh Cause of Action) and 69 (NIED claim).  Accordingly, the FAC does not indicate that any specific harm arose to plaintiffs as a result of witnessing Mr. Alston's arrest.

Finally, to state an NIED claim, the plaintiffs must witness and be simultaneously aware of physical harm.  "Although a plaintiff may establish presence at the scene through non-visual sensory perception, someone who hears an accident but does not then know it is causing injury to

a relative does not have a viable bystander claim for negligent infliction of emotional distress, even if the missing knowledge is acquired moments later." Ra v. Superior Court, 154 Cal. App. 4th 142, 149 (2007) (internal citations omitted). There must be simultaneous awareness of the incident and the physical injury to a relative for an NIED claim to survive. Id. The FAC does not state the necessary facts. The allegation that plaintiffs "had to witness their close relative Eric Alston being handcuffed, which caused the accident and injury" does not establish that the plaintiffs were aware an injury was occurring at the time of the handcuffing, even if they may have become aware after the fact. Amendment may cure this defect.

### III. Leave to Amend Is Only Partially Appropriate

Though a pro se plaintiff is generally entitled to an opportunity to correct defects in a complaint by amendment, that step is not appropriate where the defects cannot be cured. Noll, 809 F.2d at 1448. Leave to amend is not appropriate as to most claims in this case because the underlying events are described in sufficient detail, but the actions of which plaintiffs complain do not state claims for relief as a matter of law. There are two claims that may be supported by the pleading of additional facts: (1) plaintiff Arnitha Hill's Fourth Amendment unreasonable detention claim with respect to being prevented from sitting and denied access to medical equipment while detained, and (2) plaintiffs Arnitha Hill, Tiana Fields, Unique Fields, and Brejonna Ganderson's negligent infliction of emotional distress claim. All other claims should be dismissed without further leave to amend.[4]

### IV. Pro Se Plaintiff's Summary

The magistrate judge is recommending that your First Amended Complaint be dismissed, but that you be permitted to file a Second Amended Complaint as to two claims: (1) plaintiff Arnitha Hill's Fourth Amendment unreasonable detention claim with respect to being prevented from sitting and denied access to medical equipment while detained, and (2) plaintiffs Arnitha

---

[4] The City of Sacramento argues it should be dismissed for lack of subject matter jurisdiction because only state law claims are alleged against it, summarily mentioning the concept of supplemental jurisdiction in a footnote. ECF No. 17-1 at n.5. While the court recommends the FAC be dismissed in its entirety, it also recommends leave to amend on the NIED claim, which is alleged against the City, and which can be re-alleged against the City because this court clearly has supplemental jurisdiction over that claim.

Hill, Tiana Fields, Unique Fields, and Brejonna Ganderson's negligent infliction of emotional distress claim.  It is recommended that all other claims be dismissed without further amendment for two main reasons: (1) the police actions you complain about involve only Fourth Amendment issues, not violations of other constitutional provisions, and (2) it does not violate the Fourth Amendment for police to keep people outside a house for an hour right after a shooting.

You may object to these findings and recommendations within 21 days.  If the District Judge adopts these findings and recommendations, you will have 30 days from the District Judge's order to file your Second Amended Complaint.

If you file a Second Amended Complaint, it should include the signature and contact information of *each* remaining plaintiff.  It must be clear which contact information is connected to which plaintiff.  In amending Ms. Hill's Fourth Amendment claim, please provide details regarding the nature of her disability and need for accommodation, what medical equipment she was prevented from getting from the house and by whom, and whether she requested to sit down and was prevented from doing so and by whom.

## V.  Conclusion

The court ORDERS that the motion for judicial notice (ECF No. 21) is DENIED.  Further, the undersigned RECOMMENDS as follows:

1. That the motions to dismiss at ECF No. 17 and ECF No. 19 be GRANTED and that the First Amended Complaint (ECF No. 16) be DISMISSED;
2. That plaintiffs Arnitha Hill, Tiana Fields, Unique Fields, and Brejonna Ganderson be granted leave to file a Second Amended Complaint containing two claims: (1) plaintiff Arnitha Hill's Fourteenth Amendment deliberate indifference claim as to her medical needs during her detainment, (2) plaintiff Hill's Fourth Amendment unreasonable detention claim with respect to being prevented from sitting while detained, and (3) plaintiff Arnitha Hill, Tiana Fields, Unique Fields, and Brejonna Ganderson's negligent infliction of emotional distress claim.  All other claims should be dismissed without leave to amend.  The Second Amended Complaint should be filed within 30 days of the District Judge's ruling on these Findings and Recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: July 5, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE